IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

          Plaintiff,

v.                                                      CIVIL ACTION NO.   2:15-cv-07959

MOUNTAINEER GAS COMPANY, et al.,

          Defendants.

MEMORANDUM OPINION & ORDER

Pending before the court is the third-party defendant CIMCO, Inc.'s Motion to Deem Settlements in Good Faith and for Order of Dismissal, with Prejudice [ECF No. 198]. The third-party plaintiff Mountaineer Gas Company filed its Response [ECF No. 204], and CIMCO, Inc. filed a Reply [ECF No. 207]. The matter is now ripe for decision. For the following reasons, CIMCO, Inc.'s Motion is **GRANTED** in part and **DENIED** in part.

BACKGROUND

The court is currently asked to approve a settlement between the plaintiff and a third-party defendant insured by a company affiliated with the plaintiff.

In this subrogation case, Traveler's Property Casualty Company of America ("TPCCA") seeks to recover from Mountaineer Gas Company ("Mountaineer Gas") and Combustion Service & Equipment Company for a boiler explosion at Saint Mary's

Medical Center.[1] Mountaineer Gas has filed a Third-Party Complaint asserting claims against CIMCO, Inc. ("CIMCO"), MIRC Construction Services, LLC ("MIRC"), and Engel Welding, Incorporated ("Engel") (collectively, "third-party defendants"), alleging that (1) CIMCO and Engel caused the boiler explosion by "introduc[ing] or permitt[ing] to accumulate . . . debris" in the gas lines and (2) MIRC negligently supervised the installation of the pipes installed by CIMCO and Engel. Am. Third-Party Compl. ¶¶ 11, 20–24 [ECF No. 80].

Since the Third-Party Complaint was filed, strong evidence emerged that Mountaineer Gas played a role in introducing debris to the gas line; indeed, a Mountaineer Gas employee admitted that he "believed that [he] may have introduced debris or contamination into the boilers as a result of opening the bypass." Mot. Deem Settlements Ex. A, at 213:4–213:15 [ECF No. 198-1]. Despite that admission, Mountaineer Gas still maintains that the third-party defendants were negligent and owe contribution or indemnification. Mountaineer Gas's experts, however, fail to offer evidence that any of the third-party defendants caused the explosion; in fact, one of their experts opines that a faulty damper caused the explosion—not debris introduced through the pipes on which the third-party defendants worked.[2] *See* Resp. Ex. 13A, at 18 [ECF No. 204-18].

---

[1] Hess Corporation, Hess Energy Marketing, LLC, and Direct Energy Business Marketing, LLC were initially named as defendants in TPPCA's lawsuit; however, they have since settled and been dismissed from the case. *See* Stip. Dismissal [ECF No. 175].

[2] To the extent Mountaineer Gas addressed debris left behind by the third-party defendants' operations, Mountaineer Gas's expert could only opine, "*If* welding slag and other debris was present [in the gas line] . . . the responsible party or parties did not comply with the applicable standard or

2

The third-party defendants now seek to settle with TPCCA. CIMCO offered to pay $7,500 through its insurer Traveler Insurance Company of America ("TICA"), and MIRC offered to pay $12,500, half of which would be paid by TICA. Mem. Supp. Mot. Deem Settlements 3 [ECF No. 199]. Interestingly, TICA is affiliated with the original plaintiff TPCCA because they are both subsidiaries of The Traveler's Companies, Inc. *See* Resp. Ex. 9 [ECF No. 204-13]. Mountaineer Gas now opposes the third-party defendants proposed settlement with TPCCA on the grounds that it was not entered into in good faith.

## LEGAL STANDARD

Under West Virginia law, third-party defendants may settle with original plaintiffs and obtain a release from liability. *See Hager v. Marshall*, 505 S.E.2d 646, 647 (W. Va. 1998) ("[T]hird-party defendants' decisions to limit their liability through settlement is well within their rights."). If that settlement is entered into in good faith, it extinguishes a claim for contribution against the settling defendant. *Id.* Additionally, a good faith settlement extinguishes implied indemnity claims against the settling defendant unless the non-settling defendant can show that it is without fault. *Id.* at 648.

Non-settling defendants may oppose the settlements of joint tortfeasors. *Smith v. Monongahela Power Co.*, 429 S.E.2d 643, 652–53 (W. Va. 1993). However, non-settling defendants bear a heavy burden when opposing these settlements; they must

---

codes." Resp. Ex. 5, at 2 [ECF No. 204-7] (emphasis added).

prove, by clear and convincing evidence, that the settlement was not entered into in good faith by showing "corrupt intent by the settling plaintiff and joint tortfeasor, in that the settlement involved collusion, dishonesty, fraud or other tortious conduct." *Id.* at 652. To determine whether a settlement lacks good faith, courts must consider "whether the settlement arrangement substantially impairs the ability of remaining defendants to receive a fair trial." *Id.* at 651. To aid courts in determining whether a settlement undermines the non-settling defendant's ability to receive a fair trial, the Supreme Court of Appeals of West Virginia enumerated the following test:

> Some factors that may be relevant to determining whether a settlement lacks good faith are: (1) the amount of the settlement in comparison to the potential liability of the settling tortfeasor *at the time of settlement*, in view of such considerations as (a) a recognition that a tortfeasor should pay less in settlement than after an unfavorable trial verdict, (b) the expense of litigation, (c) the probability that the plaintiff would win at trial, and (d) the insurance limits and solvency of all joint tortfeasors; (2) whether the settlement is supported by consideration; (3) whether the motivation of the settling plaintiff and settling tortfeasor was to single out a non-settling defendant or defendants for wrongful tactical gain; and (4) whether there exists a relationship, such as family ties or an employer-employee relationship, naturally conducive to collusion.

*Id.* at 652. If the non-settling defendant fails to "pull[] [the] exceptionally heavy oar" of proving that a settlement lacked good faith, the court should approve the settlement. *Id.* at 652 n.13.

4

## DISCUSSION

CIMCO's Motion presents two distinct issues. First, I must consider whether the proposed settlement substantially impairs the ability of the non-settling defendants to receive a fair trial. Next, I must determine whether dismissal of the entire Third-Party Complaint is appropriate upon approval of the settlement.

### I. Good Faith Settlement

I must first determine whether the proposed settlement lacks good faith.[3] CIMCO, arguing on behalf of itself and MIRC, contends that the proposed settlement between itself and TPPCA is fair because little evidence has been produced showing that CIMCO and MIRC are liable for the injuries covered by TPPCA, the settlement is supported by adequate consideration, neither CIMCO nor MIRC entered the settlement to single out Mountaineer Gas, and there are no parties with relationships sufficiently close to be "naturally conducive to collusion." *Id.* at 652. In response, Mountaineer Gas argues that CIMCO and MIRC could be wholly liable for the boiler incident, no consideration exists because TPPCA and TICA fall under the same corporate umbrella, CIMCO and MIRC are strongly motivated to single out Mountaineer, and that the relationship between TPPCA and TICA is sufficiently close to be "naturally conducive to collusion." *Id.* For the following reasons, the

---

[3] The passage of West Virginia's new several liability tort system likely preempts case law concerning courts' role in determining whether a settlement was entered into in good faith because parties' liability is now limited to their apportioned fault. *See* W. Va. Code §§ 55-7-13a–55-7-13d. However, that system is applicable only to causes of action that arose on or after May 25, 2015—the date of its enactment. W. Va. Code § 55-7-13d. Here, the boiler explosion at the heart of this case occurred June 25, 2013. Compl. ¶ 29 [ECF No. 1]. Because the cause of action in this case occurred before May 25, 2015, West Virginia's old joint and several liability system controls.

5

settlement does not impair the ability of Mountaineer Gas to receive a fair trial, and therefore, the settlement is a good faith settlement.

First, the proposed settlement is proportional to the potential liability of CIMCO and MIRC. Although the proposed settlement represents less than three percent of the potential damages in the case, Mountaineer has produced little evidence that CIMCO and MIRC are likely to be held liable for the explosion. None of the expert reports produced show that any of the third-party defendants introduced the debris into the supply line. Indeed, the only evidence that Mountaineer Gas offers that has a modicum of potential to show liability is the contractual duties of the third-party defendants. However, absent evidence that those contractual duties were breached, that potential fades away. Simply stating, as Mountaineer Gas does, that "what caused the explosion is a highly technical issue" is insufficient to show that the amount of the settlement is indicative of "corrupt behavior on the part of the plaintiff and the settling tortfeasor or tortfeasors." *Smith*, 429 S.E.2d at 652. This is especially true where, as here, Mountaineer Gas must prove by clear and convincing evidence that the settlement lacks good faith.[4] Mountaineer Gas fails to show by clear and convincing evidence that the settlement is disproportional to the potential liability of CIMCO and MIRC. Thus, the first factor weighs in favor of CIMCO and MIRC.

---

[4] Mountaineer Gas also argues that CIMCO's insurance policy limit of $2,000,000 causes the first factor to weigh in their favor. However, a substantial insurance policy alone cannot carry the day on this factor. The size of an insurance policy alone surely cannot show malfeasance by the settling parties. To hold otherwise would penalize innocent parties that procure sizable insurance policies.

6

Second, the proposed settlement is supported by consideration. "[C]onsideration may consist in either some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 556 (W. Va. 2012) (citation omitted). Here, CIMCO and MIRC agreed to pay a sum of money through their insurer TICA to TPCCA in exchange for the release of claims against them. This—the exchange of money for the release of a legal claim—is quintessential consideration. I disagree with Mountaineer Gas's argument that there is no consideration because the exchange "amounts to . . . a paper transaction between affiliated companies under the Travelers 'umbrella.'" I have neither been presented with nor can I find any authority to support the proposition that an agreement between an insurance company and a company insured by an affiliate of that insurance company lacks consideration. Therefore, because CIMCO and MIRC agree to pay money to TPCCA through their insurance and TPCCA agrees to drop any claims against them, consideration exists and the second factor weighs in favor of CIMCO and MIRC.

Third, there appears to be no wrongful motive to single out Mountaineer Gas. Although Mountaineer Gas's setoff will be limited to the amount of the settlement, Mountaineer Gas produced no evidence that the settlement was entered into to tactically single it out. Mountaineer Gas must show "corrupt intent by the settling plaintiff and joint tortfeasor, in that the settlement involved collusion, dishonesty,

7

fraud or other tortious conduct"—merely stating that its potential contribution is limited by settlement fails to prove by clear and convincing evidence that it was wrongfully singled out. *Smith*, 429 S.E.2d at 652. Therefore, the third factor weighs in favor of CIMCO and MIRC.

Finally, there is insufficient evidence to determine that the relationship between CIMCO, a company insured by an affiliate of TPCCA, and TPCCA is naturally conducive to collusion. While affiliated companies potentially interact closely with one another in the course of business, a close business relationship absent additional evidence of fraud or collusion is insufficient to illustrate a relationship naturally conducive collusion. *See Veolia Es Special Servs., Inc. v. Hiltop Investments Inc.*, No. 3:07-0153, 2010 WL 898097, at *10 (S.D. W. Va. Mar. 12, 2010) (Chambers, J.) ("While [the settling parties] may have maintained a business relationship favorable to both parties, the Court cannot find that this is a relationship 'naturally conducive to collusion' in the same way as an employer-employee relationship or that of family members."). Mountaineer Gas failed to produce any evidence that the relationship between CIMCO, a company insured by an affiliate of TPCCA, and TPCCA is conducive to collusion beyond business ties. Therefore, the fourth factor weighs in favor of MIRC and CIMCO.

Because all four factors weigh in favor of CIMCO and MIRC, I **FIND** that Mountaineer Gas cannot show that the proposed settlement lacks good faith, and thus the proposed settlement between CIMCO, MIRC, and TPPCA is a good faith

settlement. I **GRANT** CIMCO's Motion to the extent it asks the court to approve the settlements on behalf of CIMCO and MIRC.

## II. Dismissal of Third-Party Complaint

In addition to approving the proposed settlement, CIMCO also asks the court to dismiss all currently pending claims against CIMCO and MIRC. However, it fails to provide any legal basis for dismissing all remaining pending claims in the Third-Party Complaint.

Here, the Amended Third-Party Complaint asserts negligence, contribution, and indemnity claims against CIMCO and MIRC. Because I determined the proposed settlement was entered into in good faith, the contribution claim must be dismissed. *See Hager*, 505 S.E.2d at 647.

However, an implied indemnity claim is not automatically extinguished upon settlement—it persists until the non-settling joint tortfeasor is shown to be at least partially at fault. *Id.* at 648 ("[I]n non-product liability multi-party civil actions, a good faith settlement between a plaintiff and a defendant will extinguish the right of a non-settling defendant to seek implied indemnity *unless such non-settling defendant is without fault*." (emphasis added)). Although there is strong evidence to suggest Mountaineer Gas is at least partially at fault, it is not my role to determine the sufficiency of evidence or apportion fault; that is the province of a jury.[5] Because

---

[5] In *Hager*, the Supreme Court of Appeals of West Virginia did make the determination that the non-settling defendant played some role in the underlying incident and could not succeed on an implied indemnity claim; however, that defendant admitted fault. *Id.* at 648 n.4. Mountaineer Gas has not done so here.

I am unable to apportion Mountaineer Gas's fault for the incident, the indemnification claim remains.

Finally, the Supreme Court of Appeals of West Virginia has never determined that a negligence claim—a cause of action separate and distinct from contribution and indemnity—asserted against a third-party defendant is extinguished by a third-party defendant's settlement with the original plaintiff. Therefore, the negligence claims in the Amended Third-Party Complaint also remain.

Accordingly, I **FIND** that dismissal of the contribution claim asserted in the Amended Third-Party Complaint is proper. To the extent CIMCO's Motion seeks to dismiss those claims, it is **GRANTED**. However, to the extent CIMCO's Motion seeks to dismiss the indemnification and negligence claims in the Amended Third-Party Complaint, it is **DENIED**.

## CONCLUSION

For the reasons stated above, I **ORDER** that CIMCO's Motion to Deem Settlements in Good Faith and for Order of Dismissal, with Prejudice [ECF No. 198] is **GRANTED** to the extent it asks the court to approve the settlement and dismiss the contribution claim asserted against it and MIRC in the Amended Third-Party Complaint. However, I also **ORDER** that CIMCO's Motion to Deem Settlements in Good Faith and for Order of Dismissal, with Prejudice [ECF No. 198] is **DENIED** to the extent it asks the court to dismiss the indemnification and negligence claims asserted against it and MIRC in the Amended Third-Party Complaint.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 11, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE