### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**TRAVELERS PROPERTY CASUALTY**
**COMPANY OF AMERICA**

      **Plaintiff,**

**v.**                                   **Civil Action 2:15-7959**

**MOUNTAINEER GAS COMPANY, et al.**

      **Defendants,**

**and**

**MOUNTAINEER GAS COMPANY,**
      **Third Party Plaintiff,**

**v.**

**CIMCO, INC., MIRC CONSTRUCTION**
**SERVICES, LLC, and ENGEL WELDING, INC.,**

      **Third-Party Defendants.**

### OBJECTION TO MAGISTRATE JUDGE ORDER

Pursuant to Rule 72(a) of the *Federal Rules of Civil Procedure*, Mountaineer Gas Company ("Mountaineer") objects to the Order entered by Magistrate Judge Tinsley on September 25, 2017. Dkt. 328.  The Order denies Mountaineer's Motion for Protective Order to Allocate Discovery Costs (Dkt. 226) ("Motion") on the basis that Mountaineer did not have a binding contract with the other parties to share in the costs of certain inspection and testing undertaken as part of the discovery process.  For the reasons stated below, the Order is premised on an incorrect interpretation and application of Rule 26 of the *Federal Rules of Civil Procedure*.

{B3361874.1}

This Court should therefore sustain Mountaineer's objection to the Order and enter its own order granting Mountaineer's Motion.

## I.      Factual Background

The claims at issue in this case arise from a boiler explosion that occurred at the St. Mary's Medical Center ("St. Mary's") in Huntington, West Virginia, on June 25, 2013. *Complaint* ¶¶10–29 (Dkt. 1).    Plaintiff Travelers Property Casualty Company of America commenced this action to recover the money paid to St. Mary's under the terms of an insurance policy to replace the boiler that exploded. *Complaint* ¶29.   Mountaineer provided natural gas service that fired the exploded boiler. *Complaint* ¶16.   CS&E supplied and commissioned the boiler that exploded along with two other boilers as part of new steam boiler system. *Complaint* ¶¶94–99.  Other defendants involved in the case include the contractors responsible for installing the piping for the new boiler system (CIMCO, Inc., and Engel Welding), as well as the company that oversaw the entire project as the "construction manager" – MIRC Construction Services, LLC. *First Amended Third Party Complaint* ¶¶6–13 (Dkt. 80).

Travelers claims that natural gas supplied by Mountaineer contained dirt, debris, and other foreign material that was a proximate cause of the explosion. *Complaint* ¶¶32–37. Travelers also alleges that Combustion Service and Equipment Company's ("CS&E") negligence in servicing and repairing the boilers was a proximate cause of the explosion. *Complaint* ¶¶100–105.

To gather the necessary information to attempt to determine the cause or causes of the explosion, certain inspection and testing of the natural gas supply system and the boiler components needed to take place.  Although Travelers, as the Plaintiff, bears the burden of proof to demonstrate that Defendants' conduct was a proximate cause of the explosion, Travelers did

not timely take steps to pursue this inspection and testing.  To avoid prejudicing its rights to perform such inspection and testing, Mountaineer took the initiative to develop protocols for two categories of inspection and testing: (1) inspection and air flow testing of the gas strainer removed from Mountaineer's piping system following the explosion, and the screen removed from a regulation valve on the piping for the exploded boiler ("Flow Testing"); and (2) inspection and laboratory analysis of debris gathered from various components of the natural gas piping system following the explosion ("Debris Analysis").  Before undertaking both categories of inspection and testing, Mountaineer provided drafts of proposed protocols to govern the work. Dkt. 226-1.  After receiving comments on the draft protocols from counsel for the parties, counsel ultimately agreed upon final protocols. Dkt. 226-2.  Mountaineer sent an email to all counsel of record requesting anyone who did not wish to share equally in the costs of the Flow Testing and Debris Analysis to notify the group of any such objection. Dkt. 226-3.  None of the parties objected to sharing in the costs other than Engel Welding. Dkt. 226-4.

By mutual agreement, the parties proceeded with the Flow Testing on July 19, 2016, at the Rothfuss Engineering Company ("REC") facility in Jessup, Maryland.  Mountaineer's retained causation expert, Walt Rothfuss, is a principal of REC.  In reliance on the expectation that all parties would share in the costs of the Flow Testing, REC arranged for fabrication of the necessary components to perform the Flow Testing.  Mountaineer also secured the required industrial air compressor equipment to simulate the flow of natural gas in the piping system supplying St. Mary's.  Expert witness representatives of Travelers, CS&E, and Engel Welding attended and actively participated in the Flow Testing along with REC representatives. Dkt. 226-5.  The total cost of the Flow Testing was $27,275.96.  Dkt. 226-6.

By mutual agreement, the parties proceeded with the Debris Analysis on July 29, 2016, at the Micron laboratory in Wilmington, Delaware.  In reliance on the expectation that all parties would share in the costs of the Debris Analysis, REC made the necessary arrangements for the agreed upon inspection and analysis of the debris at the Micron facility.  Expert witness representatives of Travelers, CS&E, and Engel Welding attended and actively participated in the Debris Analysis along with REC representatives. Dkt. 226-7. The total cost of the Debris Analysis was $5,895.00. Dkt. 226-8.

Results of the Flow Testing and Debris Analysis were relied upon by expert witnesses disclosed by Mountaineer, Travelers, and Engel Welding, as explained more fully in their respective reports. Dkt. 226-9 (Kim Mniszewski for Travelers), Dkt. 226-10 (Thomas Eagar for Travelers), and Dkt. 226-11 (David J. Bizzak and Robert Kimmick for Engel).  By agreement of the parties, CS&E delayed its expert witness disclosure pending a ruling on CS&E's motion to deem its settlement with Travelers to be in good faith. Dkt. 206-3.  CIMCO sought leave to delay its expert witness disclosure pending a ruling on its motion to deem the settlements by CIMCO and MIRC to be in good faith. Dkt. 198.  None of the parties opposed CIMCO's motion.

By email dated October 3, 2016, counsel for Mountaineer notified Travelers, CS&E, Engel Welding, MIRC, and CIMCO of the total expenses that Mountaineer incurred in making the arrangements for the Flow Testing and Debris Analysis, which totaled $39,805.15. Dkt. 226-6.  Dividing these costs evenly between Travelers, Mountaineer, CS&E, CIMCO, and MIRC resulted in a per-party share of $6,634.19 each. *Id.*  Notwithstanding their failure to object to sharing costs, CS&E, CIMCO, and MIRC have refused to contribute to any of the costs for the Flow Testing or Debris Analysis. Dkt. 226-12 (CS&E), Dkt. 226-13 (CIMCO), Dkt. 226-14 (MIRC).  Travelers ostensibly agreed to pay only 25% of the costs of the Debris Analysis since

Engel and CS&E also participated in the Debris Analysis, but refused to contribute to the cost of the Flow Testing. Dkt. 226-15.   However, Travelers has still not tendered any funds to Mountaineer for the Debris Analysis.

## II.   Magistrate Judge Order

The Order denies Mountaineer's Motion on the grounds that the parties did not enter into a binding contract to share in the discovery expenses at issue.   "[T]he undersigned finds that Mountaineer has failed to demonstrate a valid binding contract requiring the other parties to share in the costs incurred regarding flow testing and debris analysis." Order at 15–16.   In reaching that conclusion, the Order frames the issues as follows: "The crux of the present case is whether acceptance by silence forms a valid contract.   Is silence enough to establish acceptance of an offer?" Order at 14.   The Order acknowledges that failure of the other parties to respond, much less object, to Mountaineers stated expectation of expense sharing "may have been supportive of Mountaineer's position[.]"   Order at 15.   Yet, the Order goes on to reference the contents of the inspection notices that state "[y]ou are invited to attend and protect your interests as they appear herein[]" without stating that attending the inspections would obligate the party to share in the costs incurred. Order at 15.

## III.   Applicable Law

### A.     Standard of Review

Rule 72(a) governs the district judge's review of non-dispositive orders entered by a magistrate judge.   "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."   "A finding is 'clearly erroneous' when although there is evidence to support it, the court, on reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed."

*Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 196 (N.D.W. Va. 2000). "This standard is 'deferential' and 'findings of fact should be affirmed unless the reviewing court's view of the entire record leaves the Court with 'the definite and firm conviction that a mistake has been committed.'" *HSBC Bank USA, N.A. v. Resh*, 2014 U.S. Dist. LEXIS 10176, at *19 (S.D. W. Va. Jan. 28, 2014) (citations omitted). Factual findings are reviewed under the "clearly erroneous" standard. *Resh*, 2014 U.S. Dist. LEXIS 10176, at *19. The "contrary to law" standard is effectively *de novo* review of any questions of law decided by the magistrate judge. *Id.* at *19–20. A magistrate judge's legal conclusions interpreting the Federal Rules of Civil Procedure are subject to de novo review by the district judge. "[T]he Court will review the factual portions of the Magistrate order under the clearly erroneous standard but will review the Magistrate's legal conclusions to determine if they are contrary to law – that is, the court will conduct a de novo review of those conclusions." *Id.* at *20.

**B.    Allocation of Discovery Costs**

Rule 26(c)(1)(B) of the *Federal Rules of Civil Procedure* was amended in 2015 to make clear that district courts have the power to allocate the costs of discovery among litigants. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (B) specifying terms, including time and place **or the allocation of expenses, for the disclosure or discovery**[.]" (emphasis added). The Advisory Committee Notes on the 2015 amendments to the Rules states as follows:

> Rule 26(c)(1)(B) is amended to include an express recognition of protective orders that allocate expenses for disclosure or discovery. Authority to enter such orders is included in the present rule, and courts already exercise this authority. Explicit recognition will forestall the temptation some parties may feel to contest this authority. Recognizing the authority does not imply that cost-shifting should

become a common practice.  Court and parties should continue to assume that a responding party ordinarily bears the cost of responding.

III.    **Argument**

In denying Mountaineer's Motion, the Order effectively reads into Rule 26(c) a requirement that does not exist – that a binding contract to share discovery costs must exist before the Court can allocate discovery costs among the parties.  This interpretation of Rule 26(c) is a legal conclusion that this Court should review *de novo*.  Nothing in Rule 26(c) requires the parties to form a binding contract before the Court can require parties to share in the cost of certain discovery.  The Order states that the "2015 Advisory Committee Notes provide that acceptance by silence is an exception and not the general rule."  The Advisory Committee Notes contain no such statement.  The Advisory Committee Notes do not reference contracts or "silence by acceptance."  Rather, the Advisory Committee Notes merely state that the authority of a District Court to allocate costs does not mean "that cost-shifting should become a common practice.  Courts and parties should continue to assume that a responding party ordinarily bears the costs of responding."

Under the Order's interpretation of Rule 26(c), a court could not allocate discovery costs among parties absent an express agreement by those parties to share in those costs.  Nothing in Rule 26(c) supports that conclusion, and this Court's authority to allocate discovery expenses is not so cabined.  The cases cited in the Order addressing contract formation and whether silence can be an effective acceptance of an offer are all inapposite because none of them involved a Rule 26(c) motion to allocate discovery costs.

Mountaineer is not seeking to foist upon the other parties Mountaineer's costs incurred in all testing and inspection.  Rather, Mountaineer only seeks to allocate a fair portion of the Flow

Testing and Debris Analysis costs that were incurred to benefit all parties based on a reasonable expectation (as the Order acknowledges) that the other parties would share in those costs.

The Order's reliance on the language in the inspection notices inviting the parties "to attend and protect your interests as they appear herein" does not establish grounds to deny Mountaineer's Motion.  This language is boilerplate and merely intended to advise the parties of an event involving evidence in the case.  The Order makes too much of the absence of any condition in the inspection notices of sharing in discovery costs. "The Notices did not mention that attending the inspections would obligate the party to share in costs incurred."  Order at 15. Notably, *none* of the briefs filed in opposition to the Motion claim that any of the parties actually relied on that language to form the belief that Mountaineer must have changed its expectation that the parties would share in the costs as was communicated prior to service of the notices. The parties apparently treated that language for what it obviously is – boilerplate.

Aside from its contract formation analysis, the Order does not address whether Mountaineer has established grounds under Rule 26(c) for the Court to allocate the costs of the Flow Testing and Debris Analysis.  The circumstances clearly justify such an allocation. Travelers, CS&E, CIMCO, and MIRC actively participated in the scientific testing, obtained and used the results of the testing, and should, therefore, share equally in the costs of the Flow Testing and Debris Analysis.  Mountaineer gave notice of the proposed testing, circulated protocols for the testing, and requested the parties advise if they did not agree to share in the costs associated with the testing and inspection.  None of them replied or advised they would not agree to pay a proportionate share of the costs.  Mountaineer reasonably relied on their failure to object to cost sharing in making the necessary arrangements for the scientific inspection and testing.  Both Travelers's and CS&E's experts actively participated in both the Flow Testing and

Debris Analysis.  Travelers's experts relied upon the results in their respective expert reports. Dkt. 226-9 (Kim Mniszewski for Travelers), Dkt. 226-10 (Thomas Eagar for Travelers).  The Order acknowledges that these circumstances support Mountaineer's position. Order at 15. Boilerplate language in the inspection notices that was not relied upon by any of the parties does not change these circumstances.

Although Engel notified Mountaineer that it did not agree to share in the costs, Engel should also be required to share in the costs, because Engel's experts actively participated in both the Flow Testing and Debris Analysis and relied upon the results in their report. Dkt. 226-11 (David J. Bizzak and Robert Kimmick for Engel).  Engel should not be permitted to use the results of the Flow Testing and Debris Analysis in support of its defenses and not contribute to the costs of generating that information.

Mountaineer will be unfairly forced to incur undue expense if the other parties are not required to share in the costs of the Flow Testing and Debris Analysis to which no one objected and the results of which were relied upon by the other parties' expert witnesses.  This testing was reasonably necessary for all parties to investigate the cause of the explosion.   No binding contract is required for the Court to exercise its authority to fairly apportion discovery costs.

## IV.    Conclusion

For all the reasons set forth above, the Court should sustain Mountaineer's objection to the Order and require the other parties share equally in the costs as follows: Travelers, CS&E, Engel, CIMCO, and MIRC to pay equal shares of the costs of the Flow Testing and Debris Analysis, which totals $33,170.96.  If the Court determines that Engel should share in the costs, each party's share would be $5,528.49.  If the Court determines that Engel should not share in the costs, each party's share would be $6,634.19.

**MOUNTAINEER GAS COMPANY**

**By Counsel**


 */s/ Robert M. Stonestreet*
**Timothy M. Miller (WVSB ID No. 2564)**
**Robert M. Stonestreet (WVSB ID No. 9370)**
**BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.**
**BB&T Square**
**300 Summers Street Suite 1000**
**Charleston WV 25301**
**681-205-8888**
**681-205-8814 (fax)**
**tmiller@babstcalland.com**
**rstonestreet@babstcalland.com**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA**

      **Plaintiff,**

**v.**                                        **Civil Action 2:15-7959**

**MOUNTAINEER GAS COMPANY, et al.**

      **Defendants,**

**and**

**MOUNTAINEER GAS COMPANY,
      Third Party Plaintiff,**

**v.**

**CIMCO, INC., MIRC CONSTRUCTION
SERVICES, LLC, and ENGEL WELDING, INC.,**

      **Third-Party Defendants.**

**<u>CERTIFICATE OF SERVICE</u>**

      I, Robert M. Stonestreet, counsel for Defendant Mountaineer Gas Company, do hereby certify that on this 10th day of October 2017, I filed the foregoing **"OBJECTION TO MAGISTRATE JUDGE ORDER"** via the CM/ECF system which will send electronic notification of such filing to counsel of record as follows:

| | |
|---|---|
| Anthony J. Sparacino, Esquire | Thomas J. Underwood, Esquire |
| SPARACINO LAW OFFICE | STUTMAN LAW |
| 254 East Beckley Bypass | 20 East Taunton Road Suite 403 |
| Beckley WV 25801 | Berlin NJ 08009 |
| sparacinolawoffice@gmail.com | underwoodt@stutmanlaw.com |
| *Counsel for Travelers Property* | *Counsel for Travelers Property* |
| *Casualty Company of America* | *Casualty Company of America* |

Michael A. Frye, Esquire
Robert H. Sweeney, Jr., Esquire
JENKINS FENSTERMAKER
P O Box 2688
Huntington WV 25726-2688
mikefrey@alltel.net
rhs@jenkinsfenstermaker.com
   *Counsel for CIMCO, Inc.*

Adam M. Barnes, Esquire
WALSH, BARNES, COLLIS
& ZUMPELLA, P.C.
Gulf Tower Suite 1400
707 Grant Street
Pittsburgh PA 15219
abarnes@walshlegal.net
   *Counsel for Engel Welding, Inc.*

Christen Marie Justice, Esquire
Mark L. Garren, Esquire
KESNER & KESNER
P O Box 2587
Charleston WV 25329
christenjustice@ymail.com
mgarren@kesnerlaw.com
   *Counsel for MIRC Construction
   Services, Inc.*

 */s/ Robert M. Stonestreet*
**Timothy M. Miller (WVSB ID No. 2564)**
**Robert M. Stonestreet (WVSB ID No. 9370)**
**BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.**
**BB&T Square**
**300 Summers Street Suite 1000**
**Charleston WV 25301**
**681-205-8888**
**681-205-8814 (fax)**
**tmiller@babstcalland.com**
**rstonestreet@babstcalland.com**