IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

        Plaintiff,

v.                                   CIVIL ACTION NO. 2:15-cv-07959

MOUNTAINEER GAS COMPANY, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Mountaineer Gas Company's Motion for Sanctions for Spoliation of Evidence [ECF No. 287] and Travelers Property Casualty Company of America's Motion in Limine for Sanctions against Defendant Mountaineer Gas Company for Spoliation of Evidence [ECF No. 307]. For the reasons stated herein, these Motions [ECF Nos. 287, 307] are **DENIED**.

I.    Background

This case arises from a boiler explosion that occurred at St. Mary's Medical Center ("St. Mary's"), in Huntington, West Virginia, on June 25, 2013. In April 2013, St. Mary's commissioned the services of Combustion Service & Equipment Company ("CS&E") to supply three boilers for a new boiler system at St. Mary's. Mem. Law Supp. Mot. Sanctions Spoliation Evid. 2 ("Def.'s Mem.") [ECF. 288]. St. Mary's installed the boiler system as part of an expansion project that involved the

construction of a new building known as the "boiler house." *Id.* at 3. Next to the boiler house, Mountaineer Gas Company ("Mountaineer") maintained a small building, known as the "gashouse," which supplied Mountaineer's gas to the three boilers in the boiler house. *Id.*

Immediately after installation, St. Mary's began experiencing technical problems with the boilers including incidents related to low gas pressure from Mountaineer's supply line, which was causing a safety sensor to operate and shutdown the boilers. Pl.'s Resp. to Mountaineer Gas Co.'s Mot. Sanctions 2 ("Pl.'s Resp.") [ECF No. 293]. St. Mary's reported these issues to Mountaineer and, in response, Greg Morris, a Mountaineer technician, visited St. Mary's on June 25, 2013. *Id.* Mr. Morris, along with CS&E technician, Tim Rider, and St. Mary's facility manager, Everett Chapman, attempted to troubleshoot the low gas pressure. Def.'s Mem. 4. Mr. Rider attempted to run all three boilers simultaneously at the maximum operating rate. *Id.* Despite Mr. Rider's efforts, the gas pressure fell below the desired level. *Id.* Mr. Morris attempted to troubleshoot the low gas pressure by opening a bypass valve in the gashouse, and Mr. Rider again attempted to operate the boilers at the maximum operating rate. *Id.* at 5. Approximately eight to ten minutes into the operation, one of the boilers—referred to herein as Boiler 1—exploded. *Id.* Boilers 2 and 3 did not malfunction. Pl.'s Resp. 5.

While some of the facts regarding the aftermath of the explosion are disputed, the parties agree that representatives from St. Mary's, Mountaineer, and CS&E were onsite immediately after the explosion. *Id.* at 2–5; Def.'s Mem. 3–7. Greg Morris was

on site before, during, and after the explosion. Pl.'s Resp. 4. Lance Herbert, Mountaineer's Gas Operations Manager, joined Mr. Morris along with several other Mountaineer employees. *Id.* Representatives from Mountaineer and St. Mary's took photographs of the condition of the gashouse and the boiler room post-explosion. *Id.*; Def.'s Mem. 6–7.

Boiler 1 expelled fireproofing and debris during the explosion, covering the boiler room with debris. Pl.'s Resp. 3. St. Mary's employees immediately cleared the debris for fear that they would get "sucked into" the remaining, functioning boilers. *Id.* at 4. As part of their post-explosion inspection, Mountaineer employees checked the regulators downstream from the bypass valve and discovered that the regulators were contaminated with "a significant level of dirt and debris." *Id.* The employees discarded the debris once they completed their inspection. *Id.*

St. Mary's employees checked the gas piping and the gas trains leading to each of the three boilers upon learning that Mountaineer found debris in the regulators. *Id.* at 4–5. Dirt and debris had contaminated all three boilers, but Boiler 1 contained more dirt and debris than Boilers 2 and 3. *Id.* at 5. Mr. Chapman photographed the dirt and debris discovered in Boiler 1 and sealed the open ends of the gas piping and gas train, preserving the debris inside the piping. *Id.*; Def.'s Mem 6. Mr. Chapman took photographs of the dirt and debris discovered in Boilers 2 and 3, and discarded the debris upon completion of his inspection. Pl.'s Resp. 5.

Multiple inspections and meetings occurred over the weeks and months following the explosion. Mountaineer's retained expert, Walter Rothfuss, visited the

3

explosion site on July 11, 2013[1] and September 18, 2013[2] "to inspect the boilers, their components, and the evidence." *Id.* Ex. 8, at 6 [ECF No. 293-8].

On September 24, 2013, Bill Noyes, a consultant for Travelers Property Casualty Company of America ("Travelers"), St. Mary's insurer, informed the parties by email that St. Mary's intended to remove and replace Boiler 1 and its electrical components, and explained the procedure for Boiler 1's removal. Def.'s Mem. Ex. 16, at App. B [ECF 288-16]. Several of the parties requested to perform additional testing of the electrical components before Boiler 1 was removed. Pl.'s Resp. 7. Traveler's acquiesced to these requests and on September 30 and October 1, 2013, Rich Martin, an employee of Rothfuss Engineering Company ("REC"), and Mr. Noyes performed electrical wire marking on Boiler 1. Def.'s Mem. 8.

Between October 28 and 30, 2013, Boiler 1 was removed from St. Mary's and transported to a storage facility. Pl.'s Resp. 8. On September 18, 2014, Mr. Rothfuss conducted his last pre-suit examination of Boiler 1, at a facility in Nicholasville, Kentucky where Boiler 1 was being preserved in anticipation of future litigation. *Id.* Ex. 8, at 6.

On June 19, 2015, Travelers filed this subrogation lawsuit on behalf of its insured against Mountaineer. Compl. [ECF No. 1]. Discovery commenced shortly thereafter. The court entered multiple scheduling orders over the course of this case

---

[1] Travelers avers that a joint inspection of the loss site occurred on August 2, 2013. In attendance was Walter Rothfuss on behalf of Mountaineer and Bill Noyes on behalf of Travelers.

[2] Travelers avers that the loss site was also made available on September 19, 2013 for inspection, but it is unclear from the parties' briefing which, if any, parties attended. Pl.'s Resp. 6–7.

4

to facilitate the parties' discovery needs. *See* Sched. Orders [ECF Nos. 46, 75, 110, 158, 241, 278, 320, 327, 339, 345]. The parties also submitted multiple stipulations extending time to participate in discovery, including deadlines pertaining to the disclosure of experts, the deadlines for briefing, and deadlines to take depositions. *See* Stipulations [ECF Nos. 15, 162, 163, 195, 244, 263, 280, 291, 292].

As discovery progressed in this case, the parties engaged in additional examination and inspection of Boiler 1 and substantial written discovery. On July 28, 2016, Mr. Rothfuss, along with several other consultants, participated in a laboratory examination and analysis of debris found in Boiler 1's gas train. Pl.'s Resp. Ex. 8, at 6. On July 19, 2016, REC conducted flow testing of the gashouse inlet strainer as well as the gas train inlet strainer of Boiler 1 at REC's facility in Jessup, Maryland. *Id*. On September 7, 2016, Mr. Rothfuss conducted another examination of Boiler 1. *Id*. On September 19, 2016, he produced his expert report and conclusions with respect to the potential causes of the boiler explosion. *Id.*

Mountaineer was required, pursuant to the then-current scheduling order addressing expert disclosures, to submit its expert disclosures by September 19, 2016. Am. Sched. Order 1 [ECF No. 158].[3] In his report, Mr. Rothfuss articulated nineteen different causes for Boiler 1's explosion. Pl.'s Resp. Ex. 8, at 6. Mr. Rothfuss's initial report did not indicate that he was unable to perform a thorough investigation of the

---

[3] The deadline to disclose experts was extended by a Stipulation for Enlargement of Time [ECF No. 195], but it is unclear when the parties made their expert disclosures because neither Mountaineer nor Travelers submitted the entirety of their disclosures.

5

evidence, nor did he allege that his conclusions regarding causation were affected by the absence of any pertinent information or evidence. *Id.*

The deadline for depositions and the close of discovery was October 17, 2016, which was amended by stipulation of the parties to November 18, 2016. Stipulation Enlargement Time 1 [ECF No. 195]. A subsequent Amended Scheduling Order, dated January 18, 2017, set the deadline for dispositive motions for April 10, 2017. Sched. Order 1 [ECF No. 241]. This Amended Scheduling Order did not extend any of the discovery deadlines. *Id.*

On April 7, 2017, three days prior to the deadline to file dispositive motions set forth by the court's Amended Scheduling Order, all parties, except Mountaineer, moved again to extend the remaining deadlines. Joint Mot. Amend Sched. Order [ECF No. 272]. In their motions, the parties represented that all fact discovery and fact depositions were complete, all expert reports were exchanged, and all of the parties' experts had been deposed, except for Mr. Rothfuss. *Id.* at ¶¶ 12–13.

On April 27, 2017, six months after the close of discovery, Mr. Rothfuss submitted a new, "preliminary" report. *See* Pl.'s Resp. Ex. 10 [ECF No. 293-10]. Therein, nearly four years after the boiler explosion, Mr. Rothfuss raised the specter of spoliation of evidence, claiming that Travelers did not maintain certain evidence to the detriment of Mountaineer. *Id.* at 9, 12–13. Specifically, Mr. Rothfuss stated, for the first time, that he had requested the opportunity to perform testing of the control and safety devices on the boiler system during his July 11, 2013 inspection, and that Travelers and St. Mary's representatives refused such testing. *Id.* at 9. He

6

also stated that St. Mary's did not retain the control panels to Boiler 1, making any further evaluation of Boiler 1's electrical wiring impossible. *Id.* at 12–13.

On May 19, 2017, the parties deposed Mr. Rothfuss. *See* Pl.'s Resp. Ex. 11 [ECF No. 293-11]. Counsel for Travelers, noting Mr. Rothfuss's supplemental opinions, asked Mr. Rothfuss to explain the basis for his amendments:

> Q: As of September 2016, you were aware at that point that some of the evidence you just described was no longer in place; correct?
>
> A: Yes.
>
> Q: You also were aware that at least some of the evidence, including the flame sensor, was, in your estimation, unable to be tested; correct?
>
> A: Yes.
>
> Q: It's also your testimony that by September 2016 you're aware that the boiler had been removed from its location and placed in storage in Nicholasville, Kentucky; correct?
>
> A: Yes.
>
> Q: If you could, identify for me in your initial report where you make mention of the fact that all that evidence had been removed before you had an opportunity to test it?
>
> A: It's not there.
>
> Q: Okay. You also make no reference in your initial report to your alleged inability to render an opinion regarding CS&E's potential liability in this case because of the way the evidence was handled; is that correct?
>
> A: It is.
>
> Q: Why are there no references in your initial report to these issues regarding the handling of the evidence?

7

> Q: I can't give you a good answer for that. All in my personal oversight.

*Id.* at 3–5.

On June 12, 2017, Mountaineer filed its Motion for Sanctions for Spoliation of Evidence. Mot. Sanctions Spoliation Evid. ("Def.'s Mot.") [ECF No. 287]. The filing of this Motion corresponded with the court's deadline for submitting dispositive motions. Am. Sched. Order 1 [ECF No. 278]. Based on the Scheduling Order in effect at that time, Mountaineer filed its Motion approximately two months prior to pre-trial disclosures and four months prior to trial. *Id.*

Mountaineer claims that Travelers committed four acts of spoliation: (1) removing and discarding explosion debris ejected from the boiler; (2) removing and discarding debris found in the gas piping for the two boilers that did not explode; (3) refusing to allow on-site testing of the boiler safety devices and control system components; and (4) discarding the boiler's electrical control components contrary to an express acknowledgment that such components would be retained. Def.'s Mot. 2. As a result, Mountaineer requests that the court grant summary judgment in its favor or, in the alternative, submit an adverse inference instruction to the jury. *Id.*

On August 21, 2017, Travelers filed a motion in limine requesting sanctions against Mountaineer for spoliation of evidence. Pl.'s Mot. Lim. Sanctions Against Def. 1 ("Pl.'s Mot. Lim.") [ECF. No. 307]. Specifically, Travelers alleges that Mountaineer discarded dirt and debris from the regulators located in the gashouse during a post-explosion inspection. Pl.'s Mem. Law Supp. Mot. Sanctions 4–5 ("Pl.'s Mem.") [ECF No. 310]. Travelers requests that the court provide an adverse inference

instruction to the jury as a sanction for discarding the dirt and debris discovered in the regulators. Pl.'s Mot. Lim. 1.

## II. Legal Standard

Spoliation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). The duty to preserve evidence arises "not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A party under a duty to preserve information is obligated to "identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010) (citations omitted).

When a party breaches its duty to preserve evidence, it may face sanctions under Rule 37 of the Federal Rules of Civil Procedure or through the court's inherent authority "to control the judicial process and litigation." *Id.* at 517 (quoting *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 505–06 (D. Md. 2009)). "Generally, conduct that occurred prior to commencement of the litigation is addressed through the court's inherent authority." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 511 (2014) (citations omitted). Sanctions may be imposed to preserve "'the orderly administration of justice' and to redress conduct which abuses or undermines

9

the integrity of the judicial process." *Id.* (quoting *Victor Stanley Inc.*, 269 F.R.D. at 517).

The court has broad discretion when selecting a sanction for spoliation, however, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (quoting *West*, 167 F.3d at 779). "Because the [court's] inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest of restraint and caution, and then only to the extent necessary." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993).

III. Discussion

    a. Mountaineer's Motion for Sanctions for Spoliation of Evidence

        i. Timeliness of Motion

Federal Rule of Civil Procedure 37 governs most motions for discovery sanctions. Rule 37 "does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions." *Goodman,* 632 F. Supp. 2d at 506 (citing *McEachron v. Glans*, No. 98-cv-17, 1999 WL 33601543, at *2 (N.D.N.Y. June 8, 1999)). The parties did not raise the issue of timeliness in their briefing. However, the court is compelled to address the timeliness of Mountaineer's Motion in light of the significant sanction—dismissal of the entire action—it seeks to have imposed on Travelers.

"The lesson to be learned from the cases that have sought to define when a spoliation motion should be filed in order to be timely is that there is a particular

need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Id.* at 508. The *Goodman* Court articulated five, non-exhaustive factors to use when assessing the timeliness of spoliation motions: (1) the length of time between the filing of the motion and the close of discovery; (2) the temporal proximity between the filing of the spoliation motion and any motions for summary judgment; (3) whether the spoliation motion was made on the eve of trial, which the *Goodman* court noted should make courts wary; (4) any governing deadline for spoliation motions established by the court or by local rules; and (5) the moving party's explanation for the belated filing. *Id.* at 507–08.

In this case, Mr. Rothfuss, was dissatisfied with Travelers' attempts to preserve potential evidence as early as Fall 2013. Specifically, the alleged acts of which Mr. Rothfuss complains occurred the day of the explosion or when St. Mary's removed and transported Boiler 1 to a storage facility between October 28 and 30, 2013. Pl.'s Resp. 8.

Prior to Travelers filing suit, Mountaineer had the opportunity to visit the explosion site on at least four occasions: July 11, 2013; September 18, 2013; September 30, 2013; and, October 1, 2013. Def.'s Mem. 7–8. Mr. Rothfuss also had the opportunity to conduct an "evidence exam" pertaining to Boiler 1 on September 18, 2014. *Id.* at 8. Moreover, Mr. Rothfuss inspected Boiler 1 and evidence related to it on at least three occasions during discovery.

If Mr. Rothfuss or Mountaineer raised concerns about the destruction of evidence prior to Mr. Rothfuss's April 27, 2017 report, it is not evident to the court.

11

Mountaineer did not raise spoliation concerns during the discovery phase, nor did it bring a proper motion to compel or a motion for sanctions. No correspondence regarding the preservation of relevant evidence or objection to Travelers' proposed procedure for preserving evidence was submitted to the court. Rather, the only evidence of a dispute between the parties regarding the handling of certain evidence comes in the form of Mr. Rothfuss's supplemental expert report, filed seven months after the close of discovery and eight months after the disclosure of his initial expert report. Mountaineer filed its spoliation motion as a quasi-summary judgment motion, only two months before pre-trial disclosures were due and four months prior to the commencement of trial. Thus, the first three factors lean toward finding Mountaineer's Motion untimely. *See Goodman*, 632 F. Supp. 2d at 507–08.

The fourth factor is whether there is any governing deadline for spoliation motions established by the court or local rules. *Id.* The Local Rules for the Southern District of West Virginia provide no governing deadlines for the filing of spoliation motions. Therefore, the court looks to the Local Rules' general guidance on discovery disputes to determine the timeliness and appropriateness of Mountaineer's spoliation motion. Mountaineer's lack of diligence runs contrary to the Local Rules. Though they do not provide a specific deadline for spoliation motions, the Rules clearly articulate the procedure for handling discovery disputes. Spoliation motions are the product of discovery disputes. Whenever there is a discovery dispute in this jurisdiction, Local Rule of Civil Procedure 26.1(c) requires the parties to certify that they conferred in good faith. Additionally, Local Rule of Civil Procedure 37.1(b) states that before filing

any discovery motion, including one for sanctions, counsel for each party must make a good faith effort to confer in person or by telephone to narrow the areas of disagreement to the greatest possible extent. "It shall be the responsibility of counsel for the moving party to arrange for the meeting." L.R. Civ. P. 37.1(b). Mountaineer has provided no evidence demonstrating that it attempted to meet-and-confer regarding these discovery issues.

Spoliation motions must be made in a timely manner. Even here, where evidence was allegedly destroyed, the importance of a timely spoliation motion cannot be understated. Mountaineer argues that if it was allowed to perform certain on-site or electrical testing, "Mountaineer's entire involvement in this lawsuit would have been avoided." Def.'s Mem. 12. Had Mountaineer brought these issues before the court, it may have been in the position to fashion a suitable solution to its complaints. As the *Goodman* Court noted,

> Before ruling on a spoliation motion, a court may have to hold a hearing, and if spoliation is found, consideration of an appropriate remedy can involve determinations that may end the litigation or severely alter its course by striking pleadings, precluding proof of facts, foreclosing claims or defenses, or even granting a default judgment. And, in deciding a spoliation motion, the court may order that additional discovery take place either to develop facts needed to rule on the motion or to afford the party deprived of relevant evidence an additional opportunity to develop it from other sources. The least disruptive time to undertake this is *during* the discovery phase, not after it has closed. . . . Courts are justifiably unsympathetic to litigants who, because of inattention, neglect, or purposeful delay aimed at achieving an unwarranted tactical advantage, attempt to reargue a substantive issue already ruled on by the court through the guise of a spoliation motion, or use

> such a motion to try to reopen or prolong discovery beyond
> the time allotted in the pretrial order.

632 F. Supp. 2d at 508. Assuming, *arguendo*, that Mountaineer's allegations are true, it could have avoided the expense of protracted litigation by timely filing a discovery motion. Instead, Mountaineer actively litigated this matter for two years without ever raising this discovery dispute with the court.

The fifth factor is the moving party's explanation for belated filing. *Id*. Mountaineer provides no explanation regarding its delay in filing the present motion. *See id.* Even Mr. Rothfuss cannot account for the delay in raising the spoliation charges. Pl.'s Resp. Ex. 10, at 3–5. If Mountaineer thought that evidence was mishandled or destroyed, it should have brought these claims to the court's attention during the discovery period.

The court is struck by the fact that the absence of the disputed evidence appears to have no impact on Mr. Rothfuss's initial report, and was only raised in an amended report submitted weeks before the dispositive motion deadline. The timing of Mountaineer's Motion therefore belies its true intention. Presumably frustrated by a lack of evidence to support its claims and defenses in the days winding down to trial, Mountaineer accused Travelers of destroying relevant evidence, the destruction of which was known to it nearly four years prior to the filing of its motion. Whether the delay is the result of inattention, neglect, or purposeful intent, the court does not know—but the timing of Mountaineer's Motion undermines its claim for relief.

In sum, Mountaineer provides no reasonable explanation or justification for the time lapse between the dispute becoming ripe and the spoliation motion being

filed. Moreover, it does not appear that it made any attempt to confer with Travelers regarding its concerns. As a result, Mountaineer's Motion is **DENIED** as untimely filed.

### b. Merit of Motion

Even if Mountaineer's Motion was adjudicated on its merits, Travelers would have prevailed. A party seeking sanctions for spoliation must prove the following elements:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*In re Ethicon*, 299 F.R.D. at 511–12. (quoting *Goodman*, 632 F. Supp. 2d at 509).

Mountaineer alleges that Travelers committed four separate acts of spoliation: (1) removing and discarding explosion debris ejected from the boiler; (2) removing and discarding debris found in the gas piping for the two boilers that did not explode; (3) refusing to allow on-site testing of the boiler safety devices and control system components; and (4) discarding the boiler's electrical control components contrary to an express acknowledgment that such components would be retained. Def.'s Mot. 2.

As to the first purported act of spoliation, Mountaineer failed to demonstrate that Travelers was obligated to preserve the explosion debris ejected from the boiler. "It is well established that the duty [to preserve] is triggered, at the latest, when

Mountaineer is served with the complaint." *In re Ethicon,* 299 F.R.D. at 512 (citing *Victor Stanley Inc.*, 269 F.R.D. at 522). Courts have also agreed that "the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Id.* "However, it is less clear what other occurrences should alert a party to preserve evidence for future litigation." *Id.* "Consequently, in those instances, the analysis is highly case specific and fact dependent. *Id.* (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)). Here, the parties were reacting to exigent circumstances created by the explosion of Boiler 1. The explosion debris were cleaned up to avoid them being "sucked into the remaining operational boilers." Pl.'s Resp. 4.

As to the second act, representatives from both Mountaineer and St. Mary's discarded dirt and debris found in the regulators and gas piping after the explosion. *Id.*; Def.'s Mot. 5. These are the actions of individuals attempting to resolve a problem in the aftermath of a dangerous occurrence, not the actions of individuals with a mind towards litigation and an intention to destroy evidence. Therefore, the first two of defendant's four complaints would be disposed of under the first factor alone.

As to Mountaineer's argument that Travelers' refusal to allow on-site testing was tantamount to an act of spoliation, Travelers was not under any obligation or duty to allow on-site testing if there was cause to believe such testing was unsafe. Pl.'s Resp. 6. Absent a showing that Travelers acted with a "culpable state of mind," the court cannot conclude that declining to allow an inspection due to safety concerns constitutes an act of spoliation. *See In re Ethicon*, 299 F.R.D. at 511.

As to the final purported act of spoliation, Mountaineer has failed to establish any bad faith conduct by Travelers. In fact, the record before the court reflects concerted efforts by Travelers to inform the parties of its efforts to preserve and retain potential evidence and to allow testing and examination of the explosion site and Boiler 1. Pl.'s Resp. 6–8. Travelers' actions with respect to the retention of the boiler's electrical components are at most negligent and would not support Mountaineer's request for dismissal. *See Goodman*, 632 F. Supp. 2d at 519 (noting that a spoliator's conduct must be "so egregious as to amount to a forfeiture of his claim" to support the harsh sanction of dismissal).

Mountaineer requests, in the alternative, that the court provide an adverse inference instruction to the jury. Def.'s Mot. 2. A party seeking spoliation sanctions must "show that the evidence would have been helpful in proving its claims or defenses—i.e., that the innocent party is prejudiced without that evidence." *Johnson v. Next Day Blinds Corp.*, No. WMN-09-2069, 2012 WL 2871418 at *3 (D. Md. July 11, 2012) (citing *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010)). Mountaineer mapped and inspected the wiring to Boiler 1 prior to its removal from St. Mary's and provided no explanation regarding how testing the original electrical components would have affected Mr. Rothfuss's conclusions regarding liability. Rather, Mountaineer simply concludes that "off-site testing of the electrical controls for the safety devices would *likely* have supported Mountaineer's defenses for the same reasons as on-site testing." Def.'s Mem. 17 (emphasis added). This is not enough to support sanctions.

Thus, Mountaineer's fourth and final complaint would be disposed of under the third factor. As a result, regardless of the timeliness pf Mountaineer's Motion, spoliation sanctions are unwarranted.

### B. Travelers' Motion in Limine for Sanctions for Spoliation of Evidence

Similarly, the timing of Travelers' Motion is fatal to its claims. However, the timing of Travelers' Motion provides the court with greater justification for its denial. Travelers filed its spoliation motion nine months after the close of discovery, and two months after the deadline for filing dispositive motions. Travelers did not file a motion to compel or motion for sanctions during discovery, nor did it attempt to confer with Mountaineer regarding the evidence. Lastly, Travelers provides no explanation for the significant delay in filing its Motion with the court.

The court is suspect of any spoliation motion raised on the eve of trial where the issues raised in the motion were not previously raised in a motion to compel and where the facts giving rise to the motion were known to the parties during discovery. Here, Travelers knew for years that Mountaineer employees discarded debris found in the regulators, but raised the issue of spoliation only after it had been accused of spoliation. This appears to be a reactionary motion filed in response to Mountaineer's Motion for Sanctions. Therefore, the Court declines to levy any sanctions against Mountaineer. Plaintiff's Motion in Limine for Sanctions against Defendant Mountaineer Gas Company for Spoliation of Evidence [ECF No. 307] is **DENIED** as untimely filed.

## IV. Conclusion

For these reasons, Mountaineer Gas Company's Motion for Sanctions for Spoliation of Evidence [ECF No. 287] and Travelers Property Casualty Company of America's Motion in Limine for Sanctions against Defendant Mountaineer Gas Company for Spoliation of Evidence [ECF No. 307] are **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 16, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE